[Civ. No. 2550. Fourth Appellate District.—February 10, 1941.]

JAMES M. O'HARE et al., Respondents, v. PEACOCK DAIRIES, INC. (a Corporation), Appellant.

Mitchell, Johnson & Ludwick for Appellant.

Joseph Scott, Claflin, Dorsey & Campbell and J. Howard Ziemann for Respondents.

MARKS, J.—This is an appeal from a judgment for damages resulting from a breach of contract on the part of defendant, wherein it agreed to purchase grade A milk produced by plaintiffs on their farm near Bakersfield, in Kern County. The case has been here before (*O'Hare* v. *Peacock Dairies, Inc.*, 26 Cal. App. (2d) 345 [79 Pac. (2d) 433]; *O'Hare* v. *Peacock Dairies, Inc.*, 26 Cal. App. (2d) 753 [79 Pac. (2d) 443]). The principal facts of the case are there sufficiently detailed so that they need not be repeated here.

After our reversal of the former judgment on the question of damages only, the case was retried on three separate dates, December 16, 1938, May 12 and June 26, 1939. On the first day of trial, counsel for both parties seemed to assume that the only questions to be decided were the quantity and market value of milk produced and delivered by plaintiffs after the breach of contract; that the quality of that milk had been determined and was not an issue at the second trial. The case was reopened for the purpose of taking additional evidence. On this hearing the question of the quality was raised and contested. On a third day, additional evidence was taken and the question of the quality of the milk was again litigated.

At the commencement of the first day of the trial counsel attempted to stipulate certain facts. The question of the quality of the milk did not seem to be regarded as important. The remarks of the trial judge indicated that he considered that question settled and not open for decision. However, counsel for defendant consistently attempted to limit the stipulation to the quantity of milk produced and the price

paid therefor, as appeared in certain exhibits introduced and testimony given at the former trial. Because of the indefiniteness of this stipulation and our inability to determine just what was stipulated to, we consider it fair to construe its terms so as to cover only the quantity of milk produced by plaintiffs and the prices paid for it as shown by certain exhibits and the testimony of certain witnesses concerning those exhibits which appear in the records in the first appeal. It is clear that the stipulation covered these facts if it did not go much beyond them. We have limited our examination of the first record to those exhibits and that testimony.

In construing the stipulation we are not aided by being able to determine how the trial judge regarded it and how it was acted upon, because of the manner in which the case was tried. He reserved his rulings on many objections and admitted other evidence subject to motions to strike. The record fails to disclose any rulings on these objections. The minutes show that motions to strike were denied but there is nothing to indicate at what evidence these motions were directed. This is not unusual in cases disclosing a similar procedure and this case is a prime example of the danger involved in following it.

What we have just said concerning the stipulation made at the opening of the trial does not apply to another stipulation to which we will refer.

Plaintiffs argue that the question of the quality of the milk was settled and determined in the first trial; that under our earlier opinions (*O'Hare* v. *Peacock Dairies, Inc., supra*) it became the law of the case that the milk produced after the breach of contract was grade A milk produced from tuberculin tested cows, as specified in the contract; that only the questions of the quantity of milk produced and its market value in Bakersfield were open for further litigation.

On the other hand, defendant points to our order on the former appeals where this court said:

"The judgment is reversed and the cause is remanded for new trial solely on the issue of the amount of damages, with direction to the trial court to retry the issue of the amount of damages only; to amend its findings of fact and conclusions of law in accordance with the evidence so taken and the views herein expressed, and to render judgment in favor of plain-

tiffs for the amount of damages so found upon a determination of that issue.''

It is argued that this order is the real measure of the issues to be presented and litigated at the second trial; that the contract between the parties required defendant to accept and pay for only milk ''produced from tuberculin tested cows under grade A inspection''; that because defendant was not required to accept or pay the contract price for milk of a lesser grade the quality of the milk produced was a necessary element to be established by plaintiffs in determining the amount of their damages; that under this clause of the contract the quantity of milk produced which defendant was required to accept depended on its quality as did its market price; that damages could not be computed without proof of the quality of the milk produced. From this it is argued that, as defendant was not required to accept or pay for any milk less than grade A, plaintiffs could recover no damages for any milk which the evidence failed to show had been ''produced from tuberculin tested cows under grade A inspection''.

Under the rather broad terms of the orders made by this court on the former appeals we are inclined to accept the arguments of defendant on this question as sound and will regard the question of proof of the quality of the milk produced as necessary in fixing the amount of plaintiffs' damages.

Defendant again argues the question of the competency of the evidence of lay witnesses to establish the condition of a dairy and the grade of milk produced from it. It is again argued that only licensed veterinarians of the State of California or representatives of an approved milk inspection service of the state are competent to testify to the condition of a dairy and dairy herd and the consequent grade to be given the milk produced.

This question was thoroughly considered in our former opinion and under the evidence then before the court we held that the evidence of lay witnesses could be received on that issue. Were it not for the fact that there is now in the record on this appeal evidence which might have a bearing on the question which we did not find in the records on the former appeals, we would regard our former opinion as establishing the law of the case. However, we do not need to

decide the question as now presented for the reason that we do not need to go beyond a stipulation of counsel, the reports of representatives of an approved milk inspection service of the State of California, and proof of the contents of other such reports that had been lost or destroyed, to find sufficient evidence to support a finding that the milk produced by plaintiff was of the quality which defendant was required to accept under the terms of its contract. No question is raised as to the quantity of milk produced and its market value in Bakersfield, assuming that it was all grade A milk produced from tuberculin tested cows.

We must consider the evidence as to the quality of the milk produced during three separate periods as the evidence bearing on this question largely comes from separate sources. The first period is from June 22 or 24, to July 27, 1933, when defendant took the milk. We will refer to this as the first period. The next is from July 27, 1933, to January 31, 1934, inclusive, when Our Own Dairies took the milk. We will refer to this as the second period. The third is from February 1, 1934, to December 1, 1935, both inclusive, when the Wasco Creamery & Construction Company took the milk. We will refer to this as the third period and the purchaser as the Wasco Creamery.

Plaintiffs' dairy was officially degraded to a butterfat basis on June 22, 1933. It was officially reinstated to ''Grade milk for L. A. Gr. A Cr. purpose'' on June 28, 1933. (The abbreviations are translated, Los Angeles Grade A Cream.) The defendant purchased the milk during this period, or at least part of it, as grade B milk under a stipulation that such fact would not preclude plaintiffs from proving that the milk was in fact grade A and from claiming damages for breach of contract over that period.

. There is much evidence in the record which would have supported a finding that the milk produced during the first period was not grade A. However, we find in the record the following referring to the first period:

''MR. DORSEY: . . . Now we are not withdrawing the proposition, we being the innocent parties and in the circumstances of handling the milk that we should have the difference between the amount they did pay us and the seventy cents for that period of time that they took that milk, the Court having determined in the case that we were delivering grade A milk; in order to constitute a breach of contract we had to

prove that and that is an established fact in the case, so therefore under the decision in this case they got from us the grade A milk during that period of time. . . . MR. MITCHELL: I think that is all right, Your Honor, except for the fact that we cannot stipulate the prevailing market price was anything because it is our contention it wasn't anything. THE COURT: That is true, but subject to your general objection of incompetent, irrelevant, etc., that offer of proof is stipulated to? MR. MITCHELL: That is to say if a witness on their behalf were called he would testify along that line. THE COURT: That is right.''

The foregoing amounts to a stipulation that a witness, if called, would have testified that the milk produced during the first period was grade A milk. ■ Defendant did not ask to be relieved from this stipulation and it remains in the record. It therefore remains as evidence in the case, creating a conflict, and would support a finding that the milk delivered during the first period was grade A milk.

Defendant introduced dairy farm score cards of plaintiffs' dairy for a longer period than that covered by the first and second periods. These score cards were made by a representative of an approved milk inspection service of the State of California. Their respective dates and scores are as follows: January 17, 1933, score 81.7; June 1, 1933, score 74.2; June 28, 1933, score 72.6; September 29, 1933, score 75.8; November 28, 1933, score 81.5; January 19, 1934, score 76.8; March 8, 1934, score 84.0. On each of these score cards are blanks for scoring the ''apparent good health'' of the cows and ''tested and reactors removed''. Plaintiffs' dairy received a perfect score on every card under both headings.

Subdivision ''b'' of section 471 of the Agricultural Code provides in part as follows:

''Milk shall be produced from nonreacting tuberculin tested cows as determined by a test applied by an approved veterinarian under the supervision of the department, or shall be pasteurized and shall otherwise conform to the rules and regulations adopted by the department.'' (Chap. 723, Stats. 1933.)

Subdivision ''b'' of section 488 of the same code, prior to its recent amendment, provided as follows:

''Grade A pasteurized milk is market milk which conforms to the following minimum requirements: the health of the

cows shall be determined by physical examination at least once in six months by an official representative of an approved milk inspection service; it shall be produced on dairies that score not less than seventy per cent on the dairy farm score card adopted by the department and it shall contain not more than one hundred fifty thousand bacteria per milliliter before pasteurization and not more than fifteen thousand bacteria per milliliter at the time of delivery to the consumer." ('Chap. 695, Stats. 1933.)

We must presume that the inspector performed his duty and scored the dairy in accordance with law. These score cards indicate rather clearly that during all the first and second periods the dairy received ratings that show that the cows were inspected and found healthy; that tuberculin tests had been made; that any reactor had been removed; that the milk was at least grade A pasteurized, as defined in the statute. Under their contract plaintiffs were only required to produce grade A pasteurized milk. They were not required to produce grade A raw. (*O'Hare* v. *Peacock Dairies, Inc., supra.*) It follows that there is evidence in the record to support a finding that during the first and second periods the milk was of the quality required by the contract.

During the third period the milk was delivered to the Wasco Creamery. George S. Robertson was its laboratory technician and Sven Helster was its production manager. Robertson testified that he tested plaintiffs' milk every week and as far as the bacteria count was concerned it was grade A milk. Helster testified that the Wasco Creamery received certificates from state inspectors which showed the plaintiffs' milk to be grade A, that all such certificates dated prior to 1936 had been destroyed but that each one of them showed the milk produced and delivered by plaintiffs was grade A. This evidence is sufficient to support a finding that plaintiffs' milk was grade A during the third period.

Defendant argues that there is no finding that the milk produced by plaintiffs was grade A milk produced from tuberculin tested cows. The plaintiffs reply that the trial judge made sufficient findings on this question. They point out that a copy of the contract was attached to the second amended complaint and incorporated in the amended findings; that it was found that plaintiffs "were able, willing and ready to deliver milk according to the terms of said agreement, and in

all respects to carry out the provisions thereof'', and also "that plaintiffs have duly performed all the conditions of said agreement on their part to be performed''. Defendant replies that these findings are mere conclusions of law and therefore no findings at all.

In a separate defense in the answer it is alleged that plaintiffs' milk did not conform to the quoted portion of the contract requiring it to be grade A. It was also alleged that the milk "failed to meet the requirements of grade A inspection and failed to comply with the condition contained in said contract''. It was also alleged in the second amended complaint that after the breach plaintiffs offered to deliver and were ready, able and willing to deliver milk to defendant according to the terms of the written contract and in all respects to carry out the terms thereof. These allegations were denied in the answer. The trial court found that "all of the denials of defendant's answer thereto are untrue''. This seemed to refer to all the defenses contained in the answer and may be a sufficient finding on the question of the quality of the milk. We believe the findings taken as a whole are sufficient on the question of the quality of the milk.

There is also evidence that tuberculin tests were given the cows on October 24, 1932, on December 4, 1933, on August 29, 1934, and on November 27, 1935; that one reactor was found as a result of the test on December 4, 1934, and it was immediately removed from the herd; that no other reactors were found.

Defendant urges that as the tests were not made as frequently as required by law, plaintiffs were not producing grade A milk. There is evidence from defendant's expert that grade A milk cannot be produced from tuberculin infected cows. There is no evidence that additional tuberculin tests were not made. There is evidence that there were other qualified veterinarians available to make tuberculin tests other than the two shown in the evidence to have made such tests. There is the stipulation and evidence already pointed out that the milk produced was grade A. The evidence of the veterinarians making the tests that the tests were made at too great intervals, at best merely created another conflict in the evidence which the trial judge resolved against defendant.

Defendant urges that the findings are inconsistent. They argue that it was found that the plaintiffs received and were paid the exact amount of their damages when they sold

their milk after the breach. This was due to a typographical error in the findings which has been corrected. (See *O'Hare* v. *Peacock Dairies, Inc.*, 39 Cal. App. (2d) 506 [103 Pac. (2d) 594].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.