[Civ. No. 14198.   First Dist., Div. Two.   Sept. 14, 1950.]

STERLING DRUG, INC. (a Corporation), Respondent, v. MORRIS V. BENATAR, Appellant.

Noal R. Gray for Appellant.

Landels & Weigel and Stanley A. Weigel for Respondent.

NOURSE, P. J.—This is an appeal by defendant from a final judgment and decree of permanent injunction under the Fair Trade Act (Bus. & Prof. Code, div. 7, pt. 2, ch. 3), certain orders modifying findings and judgment and denying modification in other respects and from the judgment as modified. As the preliminary steps have no separate importance and no separate errors have been submitted the appeal will be treated as one from the judgment as modified.

The complaint alleges in effect that defendants (sued under several fictitious names) with knowledge of the fair trade agreements signed and maintained between plaintiff's predecessors and a great number of California retail dealers but rejected by defendants, and despite plaintiff's repeated protests, sell commodities the subject of these contracts and identified by trade marks, brands or names belonging to plaintiff, among others Dr. Lyon's Tooth Powder, at prices substantially less than the prices stipulated in said contracts; that defendants purchased huge stocks of one or more of these commodities with the plan of selling them at cut-rate prices under the pretense of "close-out" sales; that they plan to continue such price cutting, and, as a second cause of action, that defendants committed acts of unfair competition by advertising and selling Dr. Lyon's Tooth Powder below the minimum price stipulated in said contracts; that the conduct of defendants described in both causes of action was oppressive and malicious and intended to injure plaintiff and damage its business, with prayer for a permanent injunction, temporary restraining order and preliminary injunction and compensatory and exemplary damages.

The case was decided below on stipulations to the effect that the hearings on the motion for a preliminary injunction should be deemed the final trial of the action, evidence introduced by affidavits should have the force of oral testimony, the complaint should be deemed an affidavit as well as a pleading and plaintiff should be deemed to have filed affidavits supporting all allegations of the entire complaint, defendant should be deemed to have denied those allegations of the complaint denied or controverted by affidavits actually filed in its behalf and moreover certain specified allegations, to have filed affidavits supporting all of those denials and to have alleged affirmatively that defendant's acts complained of involved only "war surplus" goods, that plaintiff discriminated against defendant by bringing this action against it alone, whereas it had otherwise waived its fair trade rights with regard to "war surplus" goods by not proceeding with reasonable diligence to prevent such sale by others, and that sales of "war surplus" goods, even if within the Fair Trade Act, are closeout sales which are and continue within an exception of the Fair Trade Act.

The court found in all respects in accordance with the complaint restricting its allegations to defendant Benatar, a California corporation, and made moreover specific findings as to the oppressive and malicious character of said defendant's conduct, the character of the commodity so sold by defendant and plaintiff's diligence in stopping violations of its rights under the Fair Trade Act by others. It issued a permanent injunction against cut-rate selling, etc., by defendant of any of the stated commodities distributed by plaintiff except where all reference to trade marks, brands, etc., showing derivation from plaintiff were omitted or under circumstances bringing the transaction under one of the three exceptions of section 16902, subdivision (b) of the Business and Professions Code and granted plaintiff $1.00 as nominal damages, $200 as exemplary damages and costs.

Appellant's main argument is that the sales in dispute related only to war surplus property purchased by appellant indirectly from the War Assets Administration and that such property is not subject to the California Fair Trade Act. This argument is not based on any express exemption in the statute but on contentions that war surplus goods are a kind of commodity separate and distinct from regular merchandise and unknown in the year 1941 when the Fair Trade Act was added to the Business and Professions Code and that the Legislature

would not have made the act applicable to war surplus goods had they existed at the time because the application would seriously hamper the sale of these goods by the United States government and would be detrimental to the general public both as taxpayer and as consumer. In support of the separate character of war surplus goods appellant points to certain statutory enactments in this state, among which section 17531.5 of the Business and Professions Code added by Statutes 1945, chapter 1144, which requires advertisement of sales of war surplus material clearly to indicate the war surplus character thereof.

The contentions are without merit. Even if it were accepted that war surplus goods form a separate species of the genus "commodities" which are the subject of the act and that that species was unknown at the time when the act became law, such would not exclude the applicability of the act. "Where a statute deals with a genus, and the thing which afterward comes into existence is a species thereof, the language of the statute will generally be extended to the new species, although it was not known and could not have been contemplated by the legislature when the act was passed; . . ." (59 C.J. 973-74; *Hurley* v. *Inhabitants of South Thomaston*, 105 Me. 301 [74 A. 734, 736]; *McCleary* v. *Babcock*, 169 Ind. 228 [82 N.E. 453, 457]; Crawford Statutory Construction, p. 268). There is no reason why that rule should not be followed here. The statute is generally applicable to "any commodity," defined as "any subject of commerce" (Bus. & Prof. Code, § 16901). The exceptions to the prohibition of cut-rate selling contained in section 16902, subdivision (b), do not include any exception relating to the manner in which the seller acquired them. Moreover the fact that the Legislature in the year 1945 when it was aware of the problems of disposition of war surplus material added new provisions in that respect to the Business and Professions Code (Stats. 1945, ch. 1144, *supra*) but did not add an exception to the chapter containing the Fair Trade Act may well indicate that the Legislature did not desire the exception advocated by appellant. Under the above circumstances for the court to add an exception in no way expressed in the statute would be a wholly unwarranted invasion of the function of the Legislature. In this respect the well settled principle may be mentioned "that when the legislature has made exceptions to a general rule it must be deemed to have included in its excep-

tions all that it intended to except.'' (*Rothschild* v. *Superior Court*, 109 Cal.App. 345, 348 [293 P. 106].)

█ The question whether in the interest of an efficient and advantageous disposal of the war surplus goods exemption from the state Fair Trade Act is desirable evidently also belongs solely to the province of the Legislature. It is not contended that any federal statute excludes the applicability. It may nevertheless be pointed out that the federal government has given no indication whatever that it desires such exemption. As set out at length in the opinion of the learned trial judge the Surplus Property Act of 1944 (50 U.S.C.A. App. § 1611 et seq.) mentions in effect among its declared objectives (§ 1611) orderly disposal without dislocation of markets, dumping, speculation or excessive profits and utilizing normal channels of trade and commerce; there is in that statute no mention whatever of an exception to fair trade laws, although the federal provision which permits minimum price agreement for trade-marked commodities (15 U.S.C.A. § 1) is referred to as applicable in section 1629. Moreover the position taken by the War Assets Administration is shown clearly by its ''General Disposal Letter No. 20,'' which instructs its regional and district offices to give notice that the resale or use of branded or trade-marked drug and cosmetic items offered for sale and/or sold by the government may be affected by applicable state ''Fair Trade'' Practice Acts, or other similar regulatory laws.

█ Appellant further maintains that its sales of war surplus material below fair trade prices were ''close out sales'' as exempted in section 16902, subdivision (b) (1), Business and Professions Code, arguing that the government sales of war surplus goods were ''close out sales'' and that its sales of goods indirectly acquired from the government retained the same character. The provision referred to permits deviation from fair trade prices: '' (1) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.'' It does not give a general exemption from fair trade prices for goods bought at a close out sale independent from the circumstance whether the reseller himself also intends to discontinue delivering any such commodity. It seems very doubtful whether a merchant who, like appellant, bought large quantities of a war surplus commodity for the express purpose of selling them below fair trade price, can be said to be ''closing out the owner's stock,'' even if he does not intend to further carry the same commodity. (See *National*

*Distillers Products Corp.* v. *Louis Greenwalds Liquors,*
U.S.D.C. Colo. 1939, C.C.H. Trade Reg. Service 8th ed. vol.
III, No. 25, 352.) But appellant intended to continue selling
Dr. Lyon's Tooth Powder, also after his war surplus lot would
be exhausted. It is undisputed that appellant at the same
time at which he advertised and sold the war surplus Dr.
Lyon's Tooth Powder, also had for sale Dr. Lyon's Tooth
Powder in containers of the same size, bought through the
regular channels and that he intended to continue carrying
this regular commodity. The court found that there were
some differences between the packaging and cans of the war
surplus and the regular supply but that trade mark, brand
and name, quantity, quality and all other characteristics of
the two supplies were the same, and that all differences were
due to shortages of material and production problems which
since World War II caused variations in the cans, whether
war surplus or not. It cannot be said that such small differ-
ences caused the regular supply not to be "any such com-
modity" as the war surplus supply and the court was justified
in finding in accordance with the plaintiff's allegation that
appellant did not have any intention of closing out its stock
for the purpose of discontinuing delivery. To hold otherwise
would undermine the purpose of the statute.

It is true that section 16902, subdivision (b), Business
and Professions Code contains also an exemption from fair
trade prices "When the goods are damaged or deteriorated
in quality, and notice is given to the public thereof" and
that according to appellant the fact that goods were war sur-
plus indicated in itself that such goods were damaged and
deteriorated. However appellant advertised the war surplus
supply here involved as guaranteed "to be in 100% perfect
condition," a fact which evidently prevents it from bringing
them under the last mentioned exemption.

Next appellant urges that it could not be liable for
exemplary damages because it believed in good faith that it
had the right to sell war surplus goods at less than fair trade
prices and did so openly and therefore did not act with malice,
fraud or oppression which section 3294, Civil Code, requires
for the allowance of such damages. The complaint alleged and
the court found otherwise. It was alleged among other
descriptions of appellant's intent and purpose that appellant
acted wilfully and knowingly "and in defiance of plaintiff's
repeated protest and notices" and further that its conduct

"was oppressive and malicious and for the purpose of annoying and injuring plaintiff and damaging plaintiff's lawful business." Such allegations are a sufficient basis for the recovery of exemplary damages (*Morgan* v. *French,* 70 Cal.App.2d 785, 788 et seq. [161 P.2d 800] ; *Kouff* v. *Bethlehem-Alameda Shipyard, Inc.,* 90 Cal.App.2d 322, 325 [202 P.2d 1059] ).

The stipulation that "plaintiff shall be deemed to have filed affidavits supporting all allegations of the entire complaint" together with the stipulation to the effect that such stipulations shall have the same force and effect as sworn oral testimony applies also to said allegations and gives them evidentiary support, which necessarily creates a conflict in the evidence with respect to appellant's good faith and supports the findings made responsive to plaintiff's allegations. (*Moore* v. *Moffatt,* 188 Cal. 1, 4 [204 P. 220] ; *O'Hare* v. *Peacock Dairies, Inc.,* 42 Cal.App.2d 788, 793 [110 P.2d 90] ; and compare *People* v. *Blacks Food Store,* 16 Cal.2d 59, 61-62 [105 P.2d 361].) "A valid stipulation is, of course, binding upon the parties, and precludes objection to matters concerning procedure and evidence which have been expressly or impliedly agreed upon" (23 Cal.Jur. 826; *Corbett* v. *Benioff,* 126 Cal. App. 772, 777 [14 P.2d 1028] ).

Appellant also claims that exemplary damages must be based on actual damages and that where only $1.00 nominal damages were allowed no punitive damages or at least no punitive damages disproportionate to that $1.00 could be granted. It is true that exemplary damages are generally not recoverable in the absence of a showing of actual damages, but upon the question whether the money extent of the actual damages must be found to permit a finding of punitive damages there is a hopeless conflict in the decisions (*Clark* v. *McClurg,* 215 Cal. 279, 282 [9 P.2d 505, 81 A.L.R. 908] ; 15 Am.Jur. 707; 25 C.J.S. 714) and also upon the related question whether an award of nominal damages will support punitive damages (15 Am.Jur. 707-708 ; 25 C.J.S. 715; annotations 33 A.L.R. 400 et seq.; 81 A.L.R. 917). Nominal damages are not only recovered where no actual damage resulted from an ascertained violation of right but also where actual damages have been sustained, the extent of which cannot be determined. (*Gray* v. *Craig,* 127 Cal.App. 374, 378 [15 P.2d 762, 16 P.2d 798].) The granting of exemplary damages in cases of the latter kind is not inconsistent with the rule that actual damage is a necessary predicate of punitive damages (15 Am.Jur. 708).

Clearly the case before us is of the latter kind. The

court found to be true the allegations of paragraph XI of the complaint which recite among other things that the result of defendants' conduct ''has been and will continue to be, great and irreparable damage to plaintiff's business and the goodwill pertaining thereto and to the said trade marks, brands and names'' and also that ''[i]t would be extremely difficult to ascertain the amount of compensation which will afford adequate relief to plaintiff for the damage which, as herein alleged, is resulting and will continue to result from said scheme, plan and acts of defendants.'' Even without the support of the stipulations mentioned before, the truth of the allegations with respect to the damage caused by defendant's cut-rate sale of large quantities of plaintiff's fair trade goods is obvious. The question in this case therefore is not whether punitive damages can be recovered where no actual damage was suffered, but whether such punitive damages are recoverable when actual damage has been sustained and that fact found but the extent of the damage not determined because of the difficulty in ascertaining it.

Although, as stated, there is a split in the authorities on this point we answer the question in the affirmative. In so doing we follow what according to 15 American Jurisprudence 708, *supra,* is the weight of authority and what we think is the better reasoning. The reason given for the rule that punitive damages are not recoverable in the absence of actual damage is that they are mere incidents to the cause of action and never constitute the basis thereof (*Clark* v. *McClurg, supra*; 15 Am. Jur. 706). Where there is an invasion of legal right and actual damages the amount of which cannot be ascertained but which entitles plaintiff to a nominal recovery there appears to be a sufficient basis for an action independent of the exemplary damages. The recent decision of our Supreme Court in *Finney* v. *Lockhart,* 35 Cal.2d 161 [217 P.2d 19], though not directly in point because specifically concerned with damages for defamation *per se* where general damages are presumed, points in the same direction. Among the authorities there cited with respect to the relation of actual and punitive damages is *State* v. *Shain,* 341 Mo. 733 [108 S.W.2d 351], not a defamation case but an action for damages because of the malicious failure to give a proper service letter to a workman on his discharge, for which a judgment of $1.00 actual damages and $4,000 punitive damages is upheld, the court stating that punitive damages may be assessed though the actual damages recovered

are only nominal or not ascertained and that there is no fixed relation between the amount of actual damages and of punitive damages, which serve different purposes. It is pointed out that the actual damages assessed do not furnish a guide for the amount of punitive damages recoverable especially where the amount of $1.00 actual damages is only found because of the inability to prove the amount of damages actually suffered. In the opinion in the Finney case itself it is stated that the fact that the jury awarded only nominal damages in the compensatory class does not necessarily imply a finding that no more actual damage was sustained. (P. 164.) It is further held that the rule that the exemplary should bear a reasonable relation to the actual damages is only for the purpose of guarding against excess, that there is no fixed proportion which is proper between the two classes of damages, and that with respect to punitive damages as well as actual damages the appellate court can only declare an award excessive when the amount at first blush suggests passion or prejudice. The award in our case of $1.00 nominal damages and $200 punitive damages for the continued illegal cut-rate selling of large quantities of goods does not convey any such suggestion. It seems an expedient and just way of overcoming the difficulty of finding the exact extent of the actual damage in a case where exemplary damages are recoverable.

Appellant contends that the injunction granted is too broad in scope because it deprives appellant of the right to sell below fair trade prices also in the situations excepted in section 16902 of the Business and Professions Code and because it lists 23 articles of plaintiff's fair trade commodities which appellant is enjoined from selling at less than listed price whereas it was proved with respect to only one of these commodities that appellant actually so sold it. The first contention is frivolous as the injunction carefully provides for all statutory exceptions. The second contention is also wholly without merit. The general rule in this respect is that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts. The scope of the injunction must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to the unlawful acts found to have been committed. (*National Labor Relations Board* v. *Express Publishing Co.*, 312 U.S. 426, 436 [61 S.Ct. 693, 85 L.Ed. 930].) In this case there can be no

doubt of the similarity of the acts enjoined and the existence of a threat of violation as to all. Appellant refused to stop selling below listed price, giving as its reason an assumed and unfounded rule of law that war surplus goods were exempt from the Fair Trade Act. There was as much danger that appellant would next apply its theory to another of respondent's commodities as to the same one. Undue restrictions of the injunction would invite multiplicity of suits, the prevention of which is one of the statutory purposes of the injunction (Code Civ. Proc., § 526, first par. subd. 6). *Weisstein* v. *Freeman's Wines & Liquors, Inc.*, 169 Misc. 391 [7 N.Y.S.2d 234] upholding an injunction of the same scope as the one before us, as against a similar contention of a fair trade price violator is directly in point.

Finally appellant contends that respondent was not entitled to an injunction because respondent did not proceed diligently to prevent price cutting by others, and thereby waived its fair trade rights, which it cannot be allowed to enforce discriminatorily against appellant only. Contrary to this contention the court found "that plaintiff has diligently and impartially acted to stop, and has actually stopped, all violations of its rights under the Fair Trade Act which have come to plaintiff's attention," and further in substance that plaintiff's Fair Trade contracts were generally observed by dealers and that its rights under the Fair Trade Act have not been waived. Said findings find substantial support in the evidence, especially in the supplemental affidavit of C. R. Danielson, plaintiff's Pacific Coast manager, dated March 15, 1948. Appellant's last contention therefore lacks all factual basis.

The judgment is affirmed.

Goodell, J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 9, 1950. Schauer, J., voted for a hearing.