[Civ. No. 20707. First Dist., Div. Two. Jan. 21, 1964.]

GLASER BROS., Plaintiff and Appellant, v. 21st SALES COMPANY et al., Defendants and Respondents.

Rankin, Oneal, Luckhardt & Center, Jaffa & Sumski and Edward M. Jaffa for Plaintiff and Appellant.

Rea, Frasse, Anastasi, Clark & Chapman, Anthony J. Anastasi and Arthur K. Lund for Defendants and Respondents.

SHOEMAKER, P. J.—Plaintiff Glaser Bros., a corporation, brought this action to obtain a temporary restraining order and a preliminary and permanent injunction enjoining defendant 21st Sales Company, a corporation; GEM, a corporation; Park View Drug Co., a corporation; and Cecil Hill, from advertising, offering for sale, or selling a specified brand of trademarked cigars at less than the minimum prices stipulated therefor in certain fair trade contracts entered into pursuant to the Fair Trade Act (Bus. & Prof. Code, §§ 16900-16905).

Plaintiff, as the exclusive California distributor of Roi-Tan cigars, entered into certain fair trade contracts throughout the state with various retailers and therein stipulated the minimum resale prices at which said cigars could be sold at retail. Plaintiff entered into these contracts with the knowledge, consent, and authority of the manufacturer.

In October 1961, defendant GEM prepared to open a "discount house" in San Jose. Defendant 21st Sales Company, a corporation owned and controlled by defendant Park View Drug Co., was to operate the concession or department of the "discount house" in which cigars were to be sold. On October 20, 1961, Mr. Soule, the vice-president and general manager of defendant Park View Drug Co., negotiated with plaintiff for the purchase of Roi-Tan cigars for resale at the "discount house." When Mr. Soule was informed that plaintiff fair-traded these cigars, he stated that defendants would not comply with the minimum resale prices stipulated in plaintiff's fair trade contracts and that they intended to sell the cigars at a discount even if it were necessary to bring them into San Jose from Kansas City.

On November 14, 1961, an employee of plaintiff visited defendant GEM's place of business and observed that Roi-Tan cigars were being priced for sale, preparatory to the

opening of business, at prices less than those stipulated in plaintiff's fair trade contracts. Plaintiff thereafter served notice of its fair trade contracts and of the minimum prices therein stipulated upon defendant Cecil Hill, the general manager of defendant 21st Sales Company, and also upon the vice-president and president of defendant Park View Drug Co. Upon receiving said notice, the above-mentioned officers of defendant Park View Drug Co. stated that the cigars had already been priced and would be sold as labeled. Thereafter, on November 17, 1961, defendant GEM placed an advertisement in a San Jose newspaper listing Roi-Tan cigars for sale at less than the minimum resale prices stipulated in plaintiff's fair trade contracts.

On the same day, plaintiff commenced the instant proceeding and obtained the temporary restraining order prayed for. On March 27, 1962, the court entered its order denying plaintiff a preliminary injunction and dissolving the restraining order previously issued. The sole basis for this order was the court's conclusion that the Fair Trade Act imposed liability upon a nonsigner of a fair trade contract only where there was privity of title between the nonsigner and the wholesaler or manufacturer who entered into the fair trade contract and thereby established the price restrictions violated by the nonsigner. Plaintiff appeals from the order denying it a preliminary injunction and dissolving the temporary restraining order.

Appellant's sole contention is that the court erred in holding that privity of title was a necessary prerequisite to the enforceability of a fair trade contract against a nonsigner. We agree.

The California Fair Trade Act is contained in sections 16900 through 16905 of the Business and Professions Code. Section 16902 provides in part that "(a) No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others violates any law of this State by reason of any of the following provisions which may be contained in such contract: (1) That the buyer will not resell such commodity except at the price stipulated by the vendor. (2) That the vendee or producer require the person to whom he may resell such commodity to agree that he will

not, in turn, resell except at the price stipulated by such vendor or . . . vendee.''

Section 16904 provides that ''Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.''

Section 16905 provides that ''This chapter does not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices.''

In *Max Factor & Co.* v. *Kunsman* (1936) 5 Cal.2d 446 [55 P.2d 177], the Fair Trade Act, and in particular the provision as to nonsigners, was held to be a proper exercise of the police power and not a denial of due process of law nor of the equal protection of the laws. This decision and the companion case of *Pyroil Sales Co., Inc.* v. *Pep Boys, M.M & J.* (1936) 5 Cal.2d 784 [55 P.2d 194], were affirmed by the United States Supreme Court in *Pep Boys, M.M & J.* v. *Pyroil Sales Co.* (1936) 299 U.S. 198 [57 S.Ct. 147, 81 L.Ed. 122], on the authority of *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* (1936) 299 U.S. 183 [57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476]. The *Old Dearborn* case upheld the validity of the Illinois Fair Trade Act, *which is substantially identical with the California act.* In the subsequent California cases of *Sterling Drug, Inc.* v. *Benatar* (1950) 99 Cal.App.2d 393 [221 P.2d 965], and *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores* (1955) 45 Cal.2d 881 [291 P.2d 936], the applicability of the act to nonsigners was similarly upheld.

Respondents assert, however, that in each of the abovementioned California cases, the price restrictions sought to be enforced were in fact stipulated by the producer or the trademark owner of the commodity in question. Respondents contend that a mere distributor, unlike a producer or trademark owner, may not enter into nor enforce resale price maintenance agreements for the reason that he lacks a sufficient interest in the ''good will'' which the Fair Trade Act is intended to protect. We are not persuaded by this argument.

The title to the Fair Trade Act as passed in 1931 rather clearly indicates that its purpose is ''to protect trade-mark owners, *distributors* and the public against injurious and uneconomic practices in the distribution of articles of standard

quality under a distinguished trade-mark, brand or name." (Stats. 1931, p. 583, emphasis added; see *Max Factor & Co.* v. *Kunsman, supra,* at p. 454.) Moreover, the clear purport of the act itself is that fair trade contracts may be entered into between any "vendor" and "vendee" of the particular commodity (Bus. & Prof. Code, § 16902) and that "any person damaged thereby" may bring suit to enforce such a contract (Bus. & Prof. Code, § 16904). Since the act specifically prohibits horizontal price fixing between producers, wholesalers, or retailers, the Legislature presumably intended to create no further exceptions.

The narrow construction contended for has consistently been rejected by numerous decisions construing similar Fair Trade Acts.

In the *Old Dearborn* case, *supra,* the plaintiff was a wholesale dealer or distributor who had entered into fair trade contracts with numerous Illinois retailers. (299 U.S. at pp. 186-187 [81 L.Ed. at p. 115].) The court had no difficulty in finding that a distributor, as well as a producer, possessed a proprietary interest in the good will symbolized by a particular brand or trademark (*supra,* at p. 194 [81 L.Ed. at p. 119]) and that the plaintiff was therefore entitled to enter into and enforce the price restriction contracts authorized by the Illinois Fair Trade Act.

In *Norman M. Morris Corp.* v. *Hess Brothers, Inc.* (3d Cir. 1957) 243 F.2d 274, the United States Circuit Court of Appeals was called upon to determine whether the Pennsylvania Fair Trade Act, another "old-type"[1] statute similar to the California and Illinois acts, authorized an exclusive distributor for the entire United States to enter into fair trade contracts. In holding that it did, the court stated that "it is quite apparent that an exclusive distributor for a large geographic area would be affected quite seriously by the value of the good will inherent in the trade-mark." (P. 278.) It is interesting to note that the court made reference

[1]The court in the *Morris* case employed the phrase "old-type" statutes to denote those Fair Trade Acts, substantially identical with the California act, which do not specify who may stipulate the resale price beyond the word "vendor." (See Bus. & Prof. Code, § 16902.) The court noted that "old-type" statutes were in effect in some 24 states, whereas 22 states had adopted "new-type" statutes which provide, typically, that the resale price may be stipulated only by the owner of the trademark or by a distributor specifically authorized to establish said price by the owner of such trademark. (*Norman M. Morris Corp.* v. *Hess Brothers, Inc., supra,* at p. 277.)

to a California Superior Court decision holding that the California act did not require a price-fixing contract to be made either by a producer of the trademarked commodities or by the owner of the trademark but was "*sufficiently broad to include any contract made by any owner with any vendee.*" (*Supra,* at p. 278; *Parrott & Co.* v. *Somerset House, Inc.* (Cal.Super.Ct. for Los Angeles, 1937), 1 C.C.H. Trade Reg. Rep. § 3170.05.)

In New Jersey, where an "old-type" Fair Trade Act is also in effect, the courts have afforded the legislation an extremely broad construction and have held that any distributor, whether exclusive or otherwise and whether acting with or without the consent of the trademark owner or producer, may fix resale prices. (*Schenley Products Co.* v. *Franklin Stores Co.* (1938) 124 N.J.Eq. 100 [199 A. 402]; *Frank Fischer Merchandising Corp.* v. *Ritz Drug Co.* (1941) 129 N.J.Eq. 105 [19 A.2d 454].)

The most restrictive interpretation of a Fair Trade Act similar to the California act appears to have been applied in New York. Even in that jurisdiction, however, it would appear that an exclusive statewide distributor may stipulate resale prices where he was authorized to do so by the manufacturer or owner of the trademark. (*Continental Distilling Sales Co.* v. *Famous Wines & Liquors, Inc.* (1948) 274 App. Div. 713 [80 N.Y.S.2d 62].)

In the present case, appellant is the exclusive distributor for the entire state of California and was specifically authorized by the manufacturer to enter into resale price maintenance agreements. In view of the broad wording of the California act and the trend of authority in other states, we are satisfied that appellant is a "vendor" specifically authorized, pursuant to Business and Professions Code, section 16902, to stipulate fair trade prices, and that it is also entitled, under Business & Professions Code, section 16904, to enforce such price restrictions.

Respondents next contend that even if a distributor can enter into a resale price maintenance agreement, he may not thereby bind parties whose title to the commodities involved did not ultimately derive from him. Here again, respondents fail to cite any authority in support of their contention but merely assert that the underlying rationale of the Fair Trade Act is an equitable servitude theory whereby the original owner of the particular commodity may create certain restrictions which "run with the goods." Respondents also assert that if a fair trade agreement were not so limited

in effect as to bind only those persons whose title was derived from the party creating the restriction, that great confusion would result by virtue of numerous nonexclusive distributors setting various minimum resale prices within the jurisdiction of a given state.

A reading of the California Fair Trade Act lends little support to respondents' contention. Business and Professions Code, section 16904, defines unfair competition as "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to this chapter. . . ." The section sets forth no requirement that the commodity in question have been acquired from any particular source, and it therefore appears to us that the Legislature did not intend the act to be so limited.

In *Sterling Drug, Inc.* v. *Benatar, supra,* plaintiff trademark owner brought suit to enjoin sales of the commodity in question at prices lower than those specified in fair trade contracts entered into by plaintiff's "predecessors." The defendant contended that the commodities which it sold consisted entirely of war surplus property purchased indirectly from the War Assets Administration and that such property was not subject to the California Fair Trade Act. The court, in rejecting this argument, stated, "The statute is generally applicable to 'any commodity,' defined as 'any subject of commerce' (Bus. & Prof. Code, § 16901). The exceptions to the prohibition of cut-rate selling contained in section 16902, subdivision (b), do not include any exception relating to the manner in which the seller acquired them. . . . In this respect the well settled principle may be mentioned 'that when the legislature has made exceptions to a general rule it must be deemed to have included in its exceptions all that it intended to except.' (*Rothschild* v. *Superior Court,* 109 Cal.App. 345, 348 [293 P. 106].)" (Pp. 397-398.)

Although it would appear probable that plaintiff's unnamed "predecessors" were the manufacturers of the particular trademarked commodity and that privity of title did in fact exist between the defendant and the party who created the resale price restrictions, the tenor of the opinion clearly indicates that the particular source of supply from which the defendant obtained the product was irrelevant to the question of whether he was guilty of unfair competition as defined in Business and Professions Code, section 16904.

In *Joseph Triner Corp.* v. *McNeil* (1936) 363 Ill. 559

[2 N.E.2d 929], the plaintiff, one of 10 wholesale distributors in Chicago, had entered into certain fair trade contracts with its retailers. Defendant retailer, who was not a party to these contracts, threatened to sell the particular commodity at prices lower than those stipulated. Although the plaintiff refused to sell to him upon these terms, the defendant nevertheless obtained large quantities of the product in question from unspecified sources and thereafter sold it in violation of the plaintiff's price restrictions. Since a reading of this opinion clearly demonstrates that the defendant did not obtain the product from the plaintiff, it follows that privity of title was lacking. The Illinois Supreme Court nevertheless held that the plaintiff was entitled, pursuant to the Illinois Fair Trade Act, to a permanent injunction restraining the defendant from selling the product in violation of the plaintiff's fair trade agreements. This decision was affirmed by the United States Supreme Court in *McNeil* v. *Joseph Triner Corp.* (1936) 299 U.S. 183 [57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476] (decided together with *Old Dearborn, supra*).

In view of the foregoing, we are convinced that privity of title between the party creating the price restrictions and the nonsigner who violates the restrictions is not a prerequisite to the enforceability of the fair trade contract.

Appellant's additional contention that great confusion will result if numerous nonexclusive distributors are allowed to establish differing price restrictions within the same state, need not be dealt with by this court. Since appellant is the exclusive California distributor of Roi-Tan cigars, it follows that the difficulties envisioned by respondents cannot arise. As stated in *Max Factor & Co.* v. *Kunsman, supra,* at p. 468, "The situations conjured up by respondent are not here involved, and respondent is limited in his attack to the application of the statute to the factual situation now before the court."

Respondents next contend, for reasons which are unclear, that the constitutionality of the Fair Trade Act might be subject to question unless construed in such a manner as to require privity of title between the party creating the price restrictions and the party allegedly guilty of unfair competition. It suffices to say that the California Fair Trade Act has consistently been upheld by the California courts (*House of Seagram, Inc.* v. *M.C.F., Inc.* (1962) 200 Cal.App.2d 774, 776 [19 Cal.Rptr. 646]) and that the United States Supreme Court has upheld the application of a similar Fair Trade Act

to the precise fact situation here present. (*McNeil* v. *Joseph Triner Corp., supra.*)

Respondents next assert that the trial court's order must be upheld because respondents "expect to prove" that appellant is the agent of parties engaged in horizontal collusive price-fixing activities in violation of section 16905 of the Business and Professions Code. This contention does not merit discussion.

Respondents' final contention is that the denying of a preliminary injunction should not be disturbed on appeal in the absence of an abuse of discretion. They contend that no such abuse is present in the instant case. This contention may not be sustained. Although it is true that a trial court possesses a broad discretion to grant or deny a preliminary injunction, an order denying such relief must be reversed where the trial court incorrectly applied the law to undisputed facts. (*Cal-Dak Co.* v. *Sav-On Drugs, Inc.* (1953) 40 Cal.2d 492 [254 P.2d 497].)

For the reasons above stated, the order appealed from is reversed and the cause remanded to the trial court for further proceedings, in accordance with this opinion.

Agee, J., and Taylor, J., concurred.