# SHELL OIL COMPANY *v.* PARKER ET AL.

[No. 350, September Term, 1971.]

*Decided May 18, 1972.*

*Motion for rehearing filed June 13, 1972 and supplemental motion filed June 28, 1972; denied June 28, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, ▉ SINGLEY and SMITH, JJ.

*William H. Hicks,* with whom was *Robert R. Price, Jr.,* on the brief, for appellant.

*Richard A. Brown* and *Edward C. Mackie,* with whom was *John S. Mahle, Jr.,* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The appellant, Shell Oil Company, defendant below (Shell), challenges a judgment entered upon a jury's verdict for $1.00 nominal damages and for $75,000.00 punitive damages in the Circuit Court for Queen Anne's County (Turner, J.), contending that the appellees, Milton and Frank Parker, plaintiffs below, (1) failed to give timely written notice of their claim within the terms of the written contract between Shell and the Parkers; (2) the action was barred by the three year Statute of Limitations; (3) the jury should not have been allowed to consider punitive damages in the absence of actual or compensatory damages; and, (4) the jury should not have been allowed to consider punitive damages in the absence of legally sufficient evidence of actual malice on the part of Shell. We have concluded that the third contention of Shell is correct and we will reverse the judgment in regard to punitive damages and affirm the $1.00 award of nominal damages, without finding it necessary to consider the legal sufficiency of the evidence in regard to actual malice.

The basic facts are not in dispute and covered a period of several years. The Parkers (who are brothers) in 1947 or 1948 had purchased land on Maryland Route 3 (then Route 301) approximately four miles south of Glen Burnie, Anne Arundel County, known as 4300 Belle

Grove Road, where they erected a machine shop. A sales-
man representing Shell induced them to expand their
business to include a service station for the sale of Shell
products. The Parkers agreed and installed gasoline tanks
and pumps.

A Dealer Sales Contract (the Contract) was executed
on July 27, 1954 by Shell and the Parkers and is the only
written evidence of the relationship between the parties.
The primary period of duration in the Contract was for
five years, *i.e.*, from October 15, 1954, through October
14, 1959, with a provision for automatic renewal from
year to year thereafter. There was a provision for ter-
mination by the Parkers at the end of the primary pe-
riod or at the end of any subsequent contract year by
giving 30 days' notice of termination at the end of any
term. Shell had a similar right of termination at the end
of the first or any subsequent contract year. Shell ex-
ercised this right in 1968 and there is nothing in the
record to indicate that the Contract was not terminated
in accordance with its provisions. The Contract also con-
tained the usual type of provisions that Shell would sell
its products which the Parkers as "Dealer" would order
during the Contract with certain stated minimum and
maximum numbers of gallons of the respective Shell
products during each contract year. The Contract in
Paragraph 6 provided:

"6. CLAIMS. Shell shall have no liability to
Dealer for any defect in quality or shortage in
quantity of products delivered hereunder, un-
less Dealer gives Shell notice of Dealer's claim
within five (5) days after delivery of the prod-
ucts in question, and Shell is given reasonable
opportunity to inspect such products. Shell shall
have no liability to Dealer for any other claim,
and Dealer shall have no liability to Shell for
any claim (except for indebtedness or relating
to equipment), arising directly or indirectly out
of or in connection with this Contract or any

sales or deliveries of petroleum products by Shell to Dealer hereunder or otherwise, unless the claimant gives the other party notice of the claim within ninety (90) days after the date of the sale, delivery or other transaction or occurrence giving rise to the claim. Every notice of claim shall set forth fully the facts on which the claim is based."

For several years, the relationship was satisfactory to both Shell and the Parkers. About 1960 or 1961, the highway was dualized and Route 301 was changed to Route 3. Shell about that time installed additional pumps on the premises of the Parkers, who, at a considerable expense to them, built additional driveways so that traffic on both sides of the highway could enter the Parkers' station.

Not long after the new driveways were installed, a gasoline station selling Shell products was opened on the southbound section of Route 3 approximately two blocks north of the Parker station. The Parkers were forced within seven or eight months to close down their southbound operation because of lack of business.

Shell, in 1961 or 1962, opened another service station approximately four miles south of the Parker station. In 1962 or 1963, Shell erected a sign, approximately 15 feet wide and 25 feet high "from the ground up" which read:

"LAST SHELL
BEFORE
INTERSTATE (695) (83) (95)
DEL. TURNPIKE (95)
N.J. TURNPIKE (nTPj)
FILL UP HERE ......FREE INFO."

This message to the public was false. The station of the Parkers was, in fact, the last Shell station before the highways mentioned on the sign. James H. Crouse, who was the second lessee from Shell of the station having the sign, informed Lowry, Shell's District Manager, that

the sign was misleading. Lowry replied that he would not "call that [the Parker station] a Shell station."

The Parkers, from time to time, complained of the sign to salesmen of Shell and once to Shell's engineer; but nothing was done about it. Milton Parker testified that the income from the station generally declined after the sign was erected, credit card sales fell off immediately and those sales remained low until the Contract was terminated.

Mr. Crouse also testified that at a breakfast meeting with James E. Gerlock, also a District Manager for Shell, some months before the termination of the Parker contract, Gerlock told Crouse that he was going "to kick Parker out." When Crouse observed that the "Parkers are honest [and] hard working * * * and they deserve to live," Gerlock replied that the Parkers "don't represent the Shell image as we would like to have it presented" and further stated that Frank Parker was a "nut." Gerlock also stated that he would "get the [Shell] sign off the [Parkers'] wall if it's the last thing I do."

Over a 15-year period, Milton Parker had never missed a meeting of Shell dealers; but during the last few years prior to termination of the Contract, the Parkers were not notified of meetings and Shell salesmen stopped calling at the Parker station. The Parkers were not able to reach the Shell supervisory personnel by telephone and their telephone calls were not returned. Shell painted a portion of the building on the Parkers' station but left the painting job unfinished, claiming that Shell had run out of money to finish the work.

Shell terminated the Contract in October 1968. On November 20, 1968, the Parkers filed their declaration in this case in the Circuit Court for Anne Arundel County, claiming that Shell had erected the false sign "for the specific purpose of diverting business from the 'independently owned' service station" of the Parkers "to the 'company owned' service station" of Shell and that this action was part of an intentional and malicious

plan to divert such business as alleged and in carrying out that plan, Shell had employed "illegal, deceitful, and fraudulent means." The Parkers claimed compensatory damages of $10,000.00 and punitive damages of $200,-000.00. Shell pleaded the general issue plea, *i.e.* that it did not commit the wrongs alleged, and a special plea of the three year Statute of Limitations. On February 5, 1971, the action was removed to the Circuit Court for Queen Anne's County for trial. The trial was held on June 24 and 25, 1971, the only testimony at the trial being that offered by the Parkers and their witnesses, Shell offering no evidence even though Gerlock and other employees were present in court. The jury found a verdict in favor of the Parkers for "the nominal one dollar and for the punitive $75,000.00." Judgment was duly entered on the verdict. The trial court later declined to grant Shell's motion for judgment n.o.v. or, in the alternative, for a new trial and this timely appeal to this Court by Shell followed.

So far as the judgment for "the nominal one dollar" is concerned, we are of the opinion that there was sufficient evidence to submit to the jury on the violations of the technical rights of the Parkers by Shell. These rights were continuing in nature and were not barred by the three year Statute of Limitations for the continuing violation during the three year period prior to the filing of the action. *See Consolidated Public Utilities of Westminster v. Baile,* 152 Md. 371, 136 A. 825 (1927).

Nor were the violations barred by any failure of the Parkers to give notice under Paragraph 6 of the Contract inasmuch as the claim sued upon by the Parkers was a tort not arising out of or in connection with the Contract within the meaning of Paragraph 6 of the Contract which deals with shortages, defects in quality, or late deliveries of the Shell products mentioned in the Contract. Paragraph 6 does not purport to require the 90-day notice for independent torts of Shell and, indeed, such an attempted exoneration of Shell from its own malicious and illegal conduct may well be against public policy and

void. *See* 17 Am. Jur. 2d *Contracts* § 188, at 556-57. *See also The United States Telegraph Co. v. Gildersleve,* 29 Md. 232 (1868).

Then, too, violations of the technical rights of the Parkers continued and the filing of the declaration was obviously sufficient written notice to Shell of such violations during the preceding 90-day period. We shall accordingly affirm the judgment for the nominal $1.00.

Appellants further claim that the jury should not have been permitted to consider punitive damages in the absence of "actual" or compensatory damages.

In the Roman and Civil Law, punitive or exemplary damages seem to have been unknown. *Fay v. Parker,* 53 N. H. 342 (1872) ; 1 *Sedgwick on Damages* § 355, at 701 (9th ed. 1912). The term apparently originated with Lord Camden in the case of *Huckle v. Money,* 2 Wils. K. B. 205, 95 Eng. Rep. 768 (1763). In the earliest cases in which punitive damages were allowed, the plaintiffs suffered no substantial harm; or at least no physical or financial harm appeared. Restatement, *Torts,* § 908, at 554, 555 (1939). For a thorough review of the development of the doctrine of punitive damages, *see* 1 *Sedgwick, supra,* §§ 347-55, at 687-701. *See also* Note, *Punitive Tort Damages in New England,* 41 Boston U. L. Rev. 389 (1961) ; Note, *Exemplary Damages in the Law of Torts,* 70 Harv. L. Rev. 517 (1957). Despite the stirring denunciations of the doctrine of punitive damages, especially during the middle and late 19th century, the great majority of states retain the doctrine in full force. Several state codes expressly allow punitive damages,[1] and many explicitly authorize them in certain actions.[2]

A review of the Maryland cases in this area indicates that the question of whether an award of nominal technical damages will support a granting of punitive dam-

1. See Cal. Civil Code § 3294 (1970); 3 Colo. Rev. Stat. Ann. § 41-2-2 (1963); 29A Ga. Code Ann. § 105-2002 (1968); Rev. Codes of Mont. § 17-208 (1947); Okla. Stat. Ann. Title 23 § 9 (1955).
2. Cal. Pub. Util. Code § 2106 (1965); 7 Ky. Rev. Stat. § 411.020 (1971). Cf. Ill. Ann. Stat. c. 89 § 27 (1966).

ages has never been squarely decided although there is strong dicta to the contrary.

In *B & B Refrigeration & Air Conditioning Service Co., Inc. v. Stander,* 263 Md. 577, 582, 284 A. 2d 244, 247 (1971), Judge McWilliams stated for the Court that "[i]t is settled that, in cases like the case at bar, punitive damages are not recoverable in the absence of *proof* of actual loss," [3] (Emphasis supplied.) citing *Kneas v. Hecht Co.,* 257 Md. 121, 262 A. 2d 518 (1970) and *Delisi v. Garnett,* 257 Md. 4, 261 A. 2d 784 (1970). However, in that case, the jury in effect nullified its compensatory damages verdict, thus leaving the plaintiff-appellee suffering no damage whatsoever and not entitled to punitive damages.

A shoplifting incident, resulting in an action for false imprisonment and false arrest, came to its conclusion before this Court in *Kneas v. Hecht Co., supra,* 257 Md. 121, 262 A. 2d 518 (1970). After an award by the jury below for both compensatory and punitive damages, the trial judge in that case granted a judgment n.o.v. with respect to the punitive damages, finding no evidence of malice, and granted a motion for a new trial with respect to the compensatory damages unless plaintiff-appellant agreed to a remittitur in the amount of $5,000. Plaintiff accepted the reduction and subsequently appealed to this Court, seeking review of the trial judge's action in granting judgment n.o.v., or in the alternative a new trial (if his ruling was reversed by this Court) on the issue of punitive damages. We held that, since there was but one cause of action and one verdict, the plaintiffs, by accepting the reduction in compensatory damages, waived their right to appeal on the punitive damage issue, Judge Digges, observing for the Court, that "[i]t is well settled that in order to support an award for punitive damages compensatory, or actual damages

---

3. Black's Law Dictionary, at 501 (3rd ed. 1933) defines actual damages as "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages."

must first be found. *Heinze v. Murphy,* 180 Md. 423, 429, 24 A. 2d 917 (1942). Thus punitive damages are clearly dependent and can hardly be decided in a vacuum * * *." [257 Md. at 125, 262 A. 2d at 521.]

In *Delisi v. Garnett, supra,* 257 Md. 4, 261 A. 2d 784 (1970), plaintiffs below appealed from a directed verdict in favor of appellees in an action for damages for wrongful attachment. We affirmed, holding that there was no evidence of malice on the part of defendants. In conclusion, the Court noted:

> "Although the point was neither briefed nor argued on appeal, the lower court also rested its granting of the motion for a directed verdict on the Delisis' failure to prove actual damage. Proof of damage is an essential element of an action for malicious use of process. *Owens v. Graetzel,* 149 Md. 689, 695, 132 A. 265 (1926). In the absence of proof of actual loss, punitive damages are not generally recoverable. *Heinze v. Murphy,* 180 Md. 423, 24 A. 2d 917 (1942); *Schloss v. Silverman,* 172 Md. 632, 192 A. 343 (1937)." (257 Md. at 9, 261 A. 2d at 787)

In *Gorman v. Sabo,* 210 Md. 155, 122 A. 2d 475 (1956), this Court was called upon to settle what hopefully was the final round in a dispute among neighbors. Plaintiff-appellee (Sabo) in that case recovered a verdict of $3,500 compensatory and punitive damages in recompense for defendants' annoying predilection for blaring their radio (a course of conduct allegedly conceived to point out to plaintiffs the benefits of living elsewhere) much to the discomfort of the Sabos. Testimony was produced below enumerating the injuries to the Sabos, including medical testimony that Mrs. Sabo was suffering from an actual illness because of the harassment. On the issue of the trial court's charge with respect to punitive damages, to which defendants excepted, Judge Hammond (now Chief Judge) stated, *inter alia,* that "[t]he right to compensa-

tion, or at least nominal damages, must be established before punitive damages may be awarded * * *." (citing no cases) (210 Md. at 162, 122 A. 2d at 478) However, we reiterate that in that case, there was an award of compensatory damages.

An award of punitive damages was overruled in *Heinze v. Murphy*, 180 Md. 423, 24 A. 2d 917 (1942), this Court holding that punitive damages, in an action for false imprisonment and assault and battery against a Baltimore City policeman, were improper where there was no showing of malice, ill will, or that defendant acted wantonly. The Court therein noted that "[i]t is also the established rule that punitive damages 'may not be allowed when no actual damage has been sustained. * * *' 'A judgment on a verdict awarding punitive damages but no *actual damages* has been held error. However, *nominal compensatory* damages,[4] in a proper case, will support a verdict for punitive damages.' " (Emphasis supplied.) (180 Md. at 429, 24 A. 2d at 920-21)

The general rule that punitive damages cannot be recovered without proof of actual loss was also recognized in *Schloss v. Silverman*, 172 Md. 632, 642, 192 A. 343, 348 (1937) ; but again, this case did not directly involve the awarding of nominal damages together with punitive damages.

A careful examination of the holdings of the various courts of this country has not been particularly illuminating in the sense of fashioning a majority or minority rule. *But see,* 25 C.J.S. *Damages,* § 118 at 1121 *et seq;* 22 Am. Jur. 2d *Damages,* § 242 at 332 *et seq.; Anno.* 17 A.L.R.2d 527, supp. *Anno.* 33 A.L.R. 384. In truth, it is not always apparent what the courts mean by the term

---

4. *Black's Law Dictionary, supra,* at 501 defines nominal damages as "a trifling sum awarded to a plaintiff in an action, where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of his rights or a breach of the defendant's duty, or in cases where, although there has been a real injury, the plaintiff's evidence entirely fails to show its amount." See 22 Am. Jur. 2d *Damages,* § 242, at 332, 333 to the same effect.

"actual" damages.[5] Based on the general rule that a cause of action does not exist for exemplary damages alone,[6] a number of jurisdictions held there need be an award of actual compensatory damages before punitive damages can be awarded. *See e.g., First National Bank of Hutchinson v. Kansas Grain,* 60 Kan. 30, 55 P. 277 (1898) ; *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934) ; *Piper v. Duncan,* 131 S.W.2d 397 (Ct. Civ. App. Tex. 1939) ; *Barnard v. Cohen,* 165 Wisc. 417, 162 N. W. 480 (1917). However, in a great many of the cases in this area, there was a failure in pleading or proof or an affirmative finding of an absence of damages, that is, that in many of the cases in which the various courts have held that absent an award of "actual" damages, punitive damages would not be allowed, no compensable injury in fact existed. A significant number of jurisdictions apparently hold to the view that where compensatory damages were sufficiently pleaded and proved, the absence of an award of "actual" damages will not defeat recovery. *See e.g., Brown v. Grenz,* 127 Mont. 49, 257 P. 2d 246 (1953). Thus, it is apparent from these cases that recovery for punitive damages will be allowed where only nominal compensatory damages have been awarded, upon the theory that actual compensatory damages have been proved, the extent of which cannot be determined and thus the granting of punitive damages in cases of this type is not inconsistent with the rule that actual damages are a necessary predicate of punitive damages. *See, e.g., Sterling Drug v. Benatar,* 99 C.A.2d 393, 221 P. 2d 965 (1950) ; *Kluge v. O'Gara,* 227 C.A.2d 207 (1964), 38 Cal. Rptr. 607. *See also Ennis v. Brawley,* 129 W. Va. 621, 41 S.E.2d 680

---

5. *See* 22 Am. Jur. 2d *Damages,* § 241 at 328, 330. *Cf.* footnote 3, supra.

6. An apparent exception to the rule may be found in causes of action such as those for slander or libel per se where general compensatory damages are presumed from the tortious act. *See* Clark v. McClurg, 4 P. 2d 149 (Cal. 1931), *aff'd on reh.* 215 Cal. 279, 9 P. 2d 505 (1932) ; Fitchette v. Sumter Hardwood Co., 145 S. C. 53, 142 S. E. 828 (1928) ; Hesse v. Clark, 6 N. J. Misc. 421, 141 A. 570 (Sup. Ct. 1928) (false imprisonment).

(1946). However, in many of the cases decided upon this theory, it is not entirely clear that when the courts state that "actual" damages must be sufficiently proved, they are speaking in terms of compensatory damages, whether actual or nominal, or would in fact in a proper case allow punitive damages where only nominal technical damages were awarded. Some courts make this distinction clear. In *Sterling Drug v. Benatar, supra,* Justice Nourse stated for the District Court of Appeals of California:

> "* * * It is true that exemplary damages are generally not recoverable in the absence of a showing of actual damages, but upon the question whether the money extent of the actual damages must be found to permit a finding of punitive damages there is a hopeless conflict in the decisions, *Clark v. McClurg,* 215 Cal. 279, 282, 9 P. 2d 505, 81 A.L.R. 908; 15 Am. Jur. 707; 25 C.J.S., *Damages,* § 118, page 714, and also upon the related question whether an award of nominal damages will support punitive damages. 15 Am. Jur. 707-708; 25 C.J.S., *Damages,* § 118, page 715; Annotations 33 A.L.R. 400 et seq.; 81 A.L.R. 917. Nominal damages are not only recovered where no actual damage resulted from an ascertained violation of right but also where actual damages have been sustained, the extent of which cannot be determined. *Gray v. Craig,* 127 Cal. App. 374, 378, 15 P. 2d 762, 16 P. 2d 798. The granting of exemplary damages in cases of the latter kind is not inconsistent with the rule that actual damage is a necessary predicate of punitive damages."
> [99 C.A.2d at 400, 221 P. 2d at 970]

And in *Kluge v. O'Gara, supra,* it was held that:

> "* * * The language of the law is not free from the semantic ambivalence of words and phrases

in general English usage. The term 'nominal damages' describes two types of award—a trifling or token allowance for mere technical invasion of a right, without actual damage; and the very different allowance made when actual damages are substantial, but their extent and amount is difficult of precise proof. (Black's Law Dictionary, [3rd ed.])

"This distinction has been recognized in the context of the problem here presented (*Sterling Drug, Inc. v. Benatar,* 99 Cal. App. 2d 393, 400-401, 221 P. 2d 965). Punitive damages are not recoverable when no actual damage is suffered, but may be allowed when there is substantial actual damage, but the amount awarded is small ('nominal') only because of the difficulty in measurement (*id.*). *Sterling* gives full recognition to the rule that punitive damages may be awarded only when some actual damage exists, but adequately distinguishes decisions relied upon by plaintiffs which sustain an award of exemplary damages much larger than the compensatory award (*e.g., Sterling Drug, Inc. v. Benatar, supra*) or affirm award of punitive damages in an action for a publication defamatory per se, in which the law presumes actual damage (*e.g., Clark v. McClurg,* 215 Cal. 279, 9 P. 2d 505, 81 A.L.R. 908; *Finney v. Lockhart,* 35 Cal. 2d 161, 217 P. 2d 19)." [227 C.A.2d at 209-10, 38 Cal. Rptr. at 609]

*See also, Craviolini v. Scholer and Fuller Associated Architects,* 101 Ariz. 33, 37, 415 P. 2d 456, 460 (1966); *Fauver v. Wilkoske,* 123 Mont. 228, 211 P. 2d 420 (1949). There exists but a small minority of jurisdictions which have held that an award of punitive damages was proper where only nominal technical damages were awarded. It may be noted in passing that, aside from the views expressed above, some courts require a finding of substan-

tial compensatory damages before an award of punitive damages is allowed, while certain other jurisdictions require that the amount of the punitive damages be reasonably proportionate to the award of compensatory damages. Thus it may be stated that a substantial number of jurisdictions require at least a showing of compensable injury, that is, an award of nominal compensatory damages, before a recovery of punitive damages is allowed. In our opinion this is the better view and one consistent with the prior Maryland decisions. It has been argued that the allowance of punitive damages itself is incongruous with the underlying theory of damages in civil actions, *i.e.*, merely to compensate the plaintiff for injuries suffered. *See* 2 *Greenleaf on Evidence*, § 253, footnote 2 at 253-63 (Fourteenth Ed. 1883) ; *Fay v. Parker, supra*, 53 N. H. 342 (1873). To allow punitive damages where only a *technical* invasion of the plaintiff's rights existed would permit recovery of damages when, in fact, no compensable injury was proved. We therefore hold that to support an award of punitive damages in Maryland there must first be an award of at least nominal compensatory damages. We do not reach in this case the issue appearing in some cases that general compensatory damages might be presumed from the tortious act itself.

Unfortunately for the Parkers, the trial judge in his charge to the jury stated:

> "If the jury finds a legal right of the Plaintiffs technically violated then they shall find nominal damages only of one cent to one dollar.
>
> "Now nominal damages means a trivial sum, and it is awarded to Plaintiffs whose legal rights have been technically violated but who has proved no real damages."

This instruction is almost in the exact language of the Parkers' request for Instruction No. 6.

At the end of the charge, counsel for the Parkers, after some objection by counsel for Shell in regard to damages, stated:

"I would be perfectly agreeable to the Court making a brief comment on the issue of damages, that the jury may consider only nominal damages and punitive damages; the issues of nominal damages and punitive damages and that it may not consider compensatory."

The trial court then gave a supplementary instruction to the jury, in part, as follows:

"Now the Court wants you ladies and gentlemen of the jury to know that a misrepresentation is fraudulent if the maker knows the matter to be otherwise than is represented.

"Now the Court also wants to inform the jury that they are to consider only nominal and punitive damages. By nominal damages, as I have said, would be trivial damages in the amount from one cent to one dollar and punitive damages are damages that are intended to punish a person for something they have done; in this case it is alleged that the Shell Oil Company has interfered with the contract involved in this case."

Thereafter counsel for the Parkers noted no exception to the charge.

Then, after argument of counsel for the parties, the verdict was announced:

"For the nominal one dollar and for the punitive $75,000.00."

It is doubtful that the proof in the case showed *any* pecuniary loss at all to the Parkers. Milton Parker testified in regard to his dollar sales of gasoline as follows: 1960, $16,452.92; 1961, $12,925.11; 1962, $9,766.45; 1963 (during which year the sign was erected), $9,515.77; 1964, $12,817.53; 1965, $13,206.04; 1967, $13,352.18. These receipts from the sale of gasoline indicate that for the years *after the sign was erected,* the Parkers had sales of gasoline substantially *larger in dollar amount* than they had during the year it was erected and during

the preceding year of 1962. The dollar sales of gasoline continued to increase through 1967. Even in 1968—the year of the termination of the contract in October of that year—the dollar amount of sales of gasoline for the 10-month period was almost the same as the dollar amount of sales in 1967. There was proof that the credit card sales fell off after the sign was erected, but the normal amount of sales of gasoline by that credit method was not given so that this has little probative value. Mr. Crouse did state that he did not want the sign removed because he thought it benefited him, but to what probable extent was not shown. The paucity of proof of any actual damages is most likely the reason why counsel for the Parkers requested the instruction and made the suggestion to the trial court after the charge already mentioned. However this may be, the jury was instructed to consider *only* nominal damages as defined in the charge as one cent to one dollar for a violation of *a technical right* of the Parkers, and is awarded to a plaintiff "whose legal rights have been *technically* violated but who has proved *no real damages*." (Emphasis supplied.) We must conclude, therefore, that "the nominal one dollar" awarded by the jury was awarded in accordance with the trial court's instructions and was for a technical violation of the Parkers' legal rights, and was not for compensatory damages the amount of which was not proved by the Parkers.

Hence, there were no compensatory nominal damages awarded sufficient to support the verdict for punitive damages, so that the $75,000.00 judgment for these damages must be reversed.

In view of all the circumstances, we have decided to require Shell to pay the costs.

> *Judgment for nominal damages of $1.00 affirmed; judgment for $75,000.00 punitive damages reversed; the appellant, Shell Oil Company, to pay the costs.*