Melba YOUNG, Appellant (Plaintiff),

v.

William R. YOUNG, Appellee
(Defendant).

No. 85–77.

Supreme Court of Wyoming.

Nov. 21, 1985.

Neil J. Short, Casper, for appellant (plaintiff).

Kevin P. Meenan, Casper, for appellee (defendant).

Before THOMAS, C.J., and ROSE,* ROONEY, and BROWN, JJ., and RAPER, J., Retired.

RAPER, Justice, Retired.

The district court, on statute-of-limitations grounds, denied Melba Young (appellant) any relief in an action against her former husband, William R. Young (appellee), for recovery of overriding oil and gas royalties she claimed were due her by virtue of a November 1, 1970, assignment of the same by appellee, as ordered in a divorce decree dated August 26, 1969. She appeals from that part of the court's order denying recovery for the four years preceding the filing of her complaint.

Appellant states the issues to be:

"1. Whether an overriding royalty interest in severed minerals or cash realized from their sale is an interest in real or personal property.

"2. Whether W.S. § 1–3–105[ (a) ](iv)(B) [1] bars Appellant's claim against Appellee for overriding royalty payments received by Appellee within four years of the time Appellant asserted her claim." (Bracketed material added.)

We will affirm in part, reverse in part, and remand with directions.

Appellant and appellee were divorced in the Natrona County District Court on August 26, 1969. By that decree appellant was awarded, along with other property, one-third of the parties' mineral and royalty interests, including interests in oil and gas leases. Following an appeal and affirmance of the district court's decree of divorce reported as *Young v. Young*, Wyo., 472 P.2d 784 (1970), appellee, on November 1, 1970,[2] transferred by assignment to the appellant

" * * * that percentum of overriding royalty of all of the oil and gas and other hydrocarbons produced, saved and marketed from the lands located in the State of Wyoming set forth opposite said percentum figure, by virtue of the oil and gas lease issued by the United States of America set forth opposite said lands, to-wit:

| "Serial No. Conveyed: | Overriding Royalty Interest Conveyed: | Description of Lands:" |
|---|---|---|

Then followed a list of over 60 separate royalty units in 14 different Wyoming counties.

Though it was delivered, appellant failed to file the assignment for record in some counties and to notify some crude oil purchasers of her interest. The result was that, in many instances, appellee was paid royalties that should have gone to appel-

* * * * * *

"(D) For relief on the ground of fraud; * *"

Subparagraph (D) is added, though not set out in appellant's statement of the issues, because it was mentioned by the trial judge as a possibility.

**2.** Another separate assignment of an overriding royalty was a short time later executed, because it covered a producing field overlooked in preparation of the November 1, 1970, document.

---

* This case was heard and decided prior to the retirement of Justice Rose, which was effective November 1, 1985.

**1.** W.S. 1–3–105(a)(iv)(B) and (D) provides:

"(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

* * * * * *

"(iv) Within four (4) years, an action for:

* * * * * *

"(B) The recovery of personal property or for taking, detaining or injuring personal property;

lant. He did not, after April 1971, account to her for those royalties to which she was over the years entitled.

When appellant discovered in 1982 she was not receiving royalties, she filed in the several counties and delivered copies of the divorce decree and assignment to crude oil purchasers; they then started distributing overriding royalty payments to her for production attributable to her interests. Appellant, on March 16, 1983, commenced the district court action for recovery, against appellee, of royalties he received which she claimed should have been paid to her, the proceedings in which we now review.

The appellee moved to dismiss appellant's claim on the ground that it was barred because of laches or running of a statute of limitations. Following oral argument, the district judge held that more of a factual basis was necessary before a decision could be made, so he denied the motion.

Appellee thereafter filed an answer to an amended complaint of appellant, renewing the affirmative defenses of bar by the applicable statute of limitations and laches. Appellee thereafter filed a motion for summary judgment. In support, the depositions of both parties were submitted, along with appellee's affidavit alleging his full compliance with the divorce decree and that during the past 15 years since the divorce he had not attempted to hide his whereabouts or in any way hinder, misrepresent or circumvent the transfer of royalties. He also produced a letter dated April 30, 1971, from him to appellant which indicated he had to that day in 1971 paid the royalties directly to her and indicated there had been more than sufficient time for her to have placed the assignments of record and notified and sent copies to royalty disbursing agencies. At that time in 1971, he demanded a return of any duplicate payment of royalties.

Appellant also filed a motion for summary judgment, attaching in support a copy of the divorce decree and an affidavit of appellant in which she explained she did not know the mechanics necessary, following an assignment, of filing and recording and of notification to crude oil purchasers of her interests; but, upon learning she was entitled to royalties, friends helped her with the filing and recording and with notification. The divorce decree does provide that appellee was to file and record transfers of title. It is inconsistent, however, with other later proceedings in the divorce case by which appellant was to assume the burden of filing and recording. She does not now urge that to have been the responsibility of appellee.

The trial judge denied the motions for summary judgment. Counsel then stipulated that the parties would waive an evidentiary hearing and submit their cases through interrogatories, affidavits, depositions, and exhibits submitted to support the summary judgment motions, other evidence they might have, and argument of counsel. Very little further evidence of consequence was received by the court. The case was taken under advisement and a decision letter was issued by the trial judge on February 6, 1985.

By its decision, the court held that the claim of plaintiff was barred by the four-year statute of limitations covering fraud and conversion actions which, in either case, were discovered or could have been discovered in the exercise of reasonable diligence by November of 1970.

At oral argument on appeal, appellant's counsel informed this Court that he was convinced by the trial judge's decision that all of appellant's claim was barred, except that converted by appellee to his own use during the four years preceding commencement of the appellant's action. Appellant argued to the district court that if it did not see fit to allow all of appellant's claim, she was at least entitled to royalties received by appellee during that four-year period. It is on that score we agree with appellant and will reverse accordingly, though otherwise affirm.

The evidence is clear that appellant was at fault for not filing and recording the assignments and notifying purchasers of crude oil of her interest. At the same time

it was also clear that appellee was not turning over to her a share of royalties to which she was entitled. As he testified during the taking of his deposition:

"Q. Do you dispute the fact that Melba Young should have received one-third of those amounts over the years?

"A. No, I don't dispute that had she lived up to her end of this order and put these of record she would have been receiving this from back in 1971 under her own name. That I don't dispute."

From long experience as a geologist in the oil business and having acquired substantial interests in oil and gas producing properties over the years, appellee, as he testified, should have known and, he admitted during the taking of his deposition, from division orders[3] he received from crude oil purchasers which he had to sign he did know whether appellant had, by actual or constructive notice by filing or recording, notified such purchasers of her interest. He therefore knowingly retained and converted to his own use appellant's rightful share of royalties paid.

The trial court had to find that the appellee was guilty of either conversion or fraud in order to apply the four-year statute of limitations as it did. W.S. 1–3–105(a)(iv)(B) and (D), supra note 1. Though it found conversion and fraud, the trial court further found that appellee took no affirmative steps to mislead appellant nor did appellee attempt to conceal the existence of appellant's claims. Appellee does not appeal the findings of conversion or fraud and urges affirmance, so must agree that one or the other or both are present. Essentially, appellee's conduct amounted to conversion.

■ All of the elements of conversion are present. Conversion is defined as any distinct act of dominion wrongfully executed over another's property in denial of his right or inconsistent therewith. *Satterfield v. Sunny Day Resources, Inc.,* Wyo., 581 P.2d 1386 (1978), cert. denied 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979); *Western National Bank of Casper v. Harrison,* Wyo., 577 P.2d 635 (1978). When minerals are severed from the land, they become personal property. *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.,* 70 Wyo. 263, 248 P.2d 198 (1952); *State ex rel. School Dist. No. 1 in Weston County v. Snyder,* 29 Wyo. 163, 212 P. 758 (1923); *Board of Com'rs of Sweetwater County, Wyo. v. Bernardin,* 74 F.2d 809 (10th Cir. 1934). When oil and gas have been brought to the surface, they become personal property. *Denver Joint Stock Land Bank of Denver v. Dixon,* 57 Wyo. 523, 122 P.2d 842, 140 A.L.R. 1270 (1942). Appellant therefore had a property right in the severed oil and gas and to royalties, arising out of the proceeds from their sale, paid as a money equivalent of the property interest. As pointed out in *Satterfield v. Sunny Day Resources, Inc.,* in order to recover in an action for conversion the elements of proof necessary are that:

1. The plaintiff has a legal title. Appellant had an assignment from appellee of a percentum of royalties on oil and gas produced and marketed.

2. There is a right to immediate possession at time of conversion. Appellant had an immediate right to one-third of the royalty when received by appellee.

3. Defendant dealt with the property in some wrongful manner. Appellee converted appellant's one-third royalty to his own use and thus wrongfully exercised dominion over appellant's property.

4. When a defendant comes into possession lawfully or without fault, plaintiff must show demand and refusal to turn over the property. Appellant made a demand, and appellee refused to turn over her share of the royalties. As appellee's deposition shows, appellee took the position that appellant was a "free woman and over 21, [knowing] what her responsibility was" so since she did not file and notify, she was not now entitled

---

3. Roughly speaking, a division order is a document by which the purchaser of crude oil requires an interest holder in the production to acknowledge his or her interest to be as stated therein.

to the royalties. In more earthy terms, "that's tough; you're out of luck."

5. The value of property converted must be shown. The value of appellant's royalty interest received by appellee is the amount of appellant's interest in money appellee was paid and did not turn over to her.

■ As to fraud, we cannot, from the facts and findings of the trial judge, see fraud in its most ominous aspect where the elements are false representations by a defendant and are relied on by a plaintiff to his or her damage. *Anderson v. Foothill Industrial Bank*, Wyo., 674 P.2d 232, 238 (1984), citing *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). As set out in the decision letter of the district court, appellee took no affirmative steps, to mislead the appellant, upon which she could rely. The evidence to the contrary indicates her reliance was on a court divorce decree directing appellee to file the assignment but which was later modified to the effect that if appellee did not make the filings, appellant could submit the amount of filing expense involved to appellee, for payment. There certainly is not present the clear and convincing evidence necessary to find fraud as required by *Johnson v. Soulis*, supra.

The most by way of fraud of which appellee might be guilty is "constructive fraud" defined in *Matter of Estate of Borton*, Wyo., 393 P.2d 808 (1964), as all acts, omissions and concealment involving a breach of legal or equitable duty resulting in damage to another, and existing where, although not actually fraudulent, it ought to be so treated when it has the same consequence and legal effect. The trial judge, in his decision letter, cited *Matter of Estate of Borton* and found it applicable in that the court there found no concealment, as here, and therefore held no constructive fraud to be present. We are satisfied that the trial judge found no constructive fraud. We agree with that finding.

We conclude that the appellee is guilty of conversion but not of fraud, actual or constructive, so, therefore, the four-year limitation of W.S. 1-3-105(a)(iv)(B), supra note 1, is applicable, if the statute of limitations is a bar to appellant's claim in whole or in part.

We can now turn to the last four-year entitlement issue. The assignment from appellee to appellant was of "that percentum of overriding royalty of all of the oil and gas and other hydrocarbons produced, saved and marketed from the lands located in the State of Wyoming set forth opposite said percentum figure." The evidence before the court was that some of the leases were producing, while others were not, and in at least one lease, a part of the lease had ceased production since the assignment. It also appears that the production of an active well can go on for years, some lands may not produce until after acquisition of the overriding royalty interest, and some dry up. Some leases may have been canceled. It is obvious also from the quoted terms of the assignment that the royalty is not due until the "oil and gas and other hydrocarbons" are "produced, saved and marketed." From the record, it appears that a purchaser of crude oil makes payment of the royalty to the various interests in accordance with a division order. We can then conclude that payment of the royalty is not due until production is sold and the purchaser makes payment. Just as appellee has a right to royalties when paid, so also does appellant have her right to the assigned portion when paid.

■ As a general proposition, a claim (cause of action) accrues only when forces wrongfully put in motion produce injury. *Duke v. Housen*, Wyo., 589 P.2d 334, reh. denied 590 P.2d 1340, cert. denied 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). It can, therefore, be said that appellee put such forces in motion when he first converted to his own use appellant's share of royalties which he received shortly after his letter of April 30, 1971, to appellant by which he advised her that "[t]here has been more than sufficient time for you to have placed these assignments on record and sent notification and copies to the various disbursing agencies for these royalties." Up to that time he had been paying to her

one-third of moneys received by him from the royalty interests. By his deposition, appellee stated, when asked whether he had been accounting to appellee for royalties received, "[u]p to April of '71. I ceased at that point, informed her that I was ceasing my accounting." Thereafter when he, on different occasions, received royalties and made no remittances, though part of the royalties he received was appellant's, he wrongfully put in motion forces which injured appellant.

■ Wyoming is a "discovery" state and the statute of limitations is triggered when a plaintiff knows or has reason to know the existence of the claim. *Olson v. A.H. Robins Company, Inc.*, Wyo., 696 P.2d 1294, 1297 (1985), citing *Duke v. Housen*, supra, and *Banner v. Town of Dayton*, Wyo., 474 P.2d 300 (1970). Wyoming also has, in addition, a statute, referring to preceding W.S. 1-3-105(a)(iv)(B), covering conversion (taking or detaining personal property). W.S. 1-3-106 provides in pertinent part:

"A cause of action for the wrongful taking of personal property is not deemed to have accrued until the wrongdoer is discovered. * * *"

We hold, as did the trial judge, that appellant could have discovered that she was not receiving her overriding royalty share in 1970 and at that time had reason to know of her claim. However, we part company with the trial judge when he threw out appellant's entire claim.

Because of the nature of an overriding royalty, production payments are or can be of an intermittent nature. The royalty is not paid until the production is sold. In other words, appellant had no claim in 1971 for royalties paid on crude oil purchased in 1980. Her claim to a percentum of a 1980 distribution of royalties was not activated until received by appellee. There is no termination date in the assignment.

■ As pointed out in *Satterfield v. Sunny Day Resources, Inc.*, supra, conversion is a tortious act. Appellee's failure to remit to appellant her royalty share as received was a recurring tort of a sort which involved separate and successive injuries from separate and successive acts. It is an exemplification of periodic recurring wrongful acts—a series of tortious acts, each of which could be the basis for a separate claim, not continuing damage from an original tort.

■ Various types of tort cases illustrate court holdings in such instances. The rule is that where there are recurring or continuous tortious acts, the applicable statute of limitations accrues from the date of each act that precipitates court action for recovery and not on the date of the first such act. *Cacioppo v. Southwestern Bell Telephone Company*, Mo.App., 550 S.W.2d 919 (1977); *Gowing v. McCandless*, 219 Kan. 140, 547 P.2d 338 (1976); *Shell Oil Company v. Parker*, 265 Md. 631, 291 A.2d 64 (1972); *Nelson v. C & C Plywood Corp.*, 154 Mont. 414, 465 P.2d 314, 39 A.L.R.3d 893 (1970); *Kearney v. Atlantic Cement Company*, 33 App.Div.2d 848, 306 N.Y.S.2d 45 (1969); *Freestate Industrial Development Company v. T. & H., Inc.*, La., 188 So.2d 746 (1966); *Harang v. Aetna Life Insurance Company*, Tex.Civ.App., 400 S.W.2d 810 (1966); *Fergerson v. Utilities Elkhorn Coal Company*, Ky., 313 S.W.2d 395 (1958). In other words, all acts are barred for all the wrongs with injury that accrued prior to the term of limitations running to the date of filing an action for recovery.

It has been wisely observed that a wrongdoer cannot and should not gain a prescriptive right to continue wrongful and injurious acts. *Devoke v. Yazoo & M.V.R. Co.*, 211 La. 729, 30 So.2d 816 (1947); *Nelson v. Robinson*, 47 Cal.App.2d 520, 118 P.2d 350 (1941). While appellant has had the benefit of the statute of limitations for an extended period and its useful purposes preserved, no permanent right is bestowed to continue such wrongful acts during the limitations term immediately preceding the commencement of appellee's action. If allowed during such term, and carrying such a fallacious doctrine to the extreme, appellant would lose even a future right to her overriding royalties.

There is a caveat which must go with the doctrine just announced. It must be realized that this Court can only apply a rule applicable to the case at hand. For example, see *Dolph v. Mangus,* Ind.App., 400 N.E.2d 189 (1980), where over a period of years there were recurring wrongful acts and separate injuries, but they had caused and created a cumulative injury to a point of becoming permanent damage before the statutory period next preceding the date of filing of an action for recovery. The court held the claim barred. The rule we adopt fits the facts before us, but its application is relatively narrow and should be applied with caution.

The ultimate result of applying the rule in the case before us is that appellant may recover for her share of royalties received but not remitted by appellee accruing within the four years next preceding the filing of her district court action. As to the rest, she is barred.

Affirmed in part, reversed in part, and accordingly remanded to the district court for an accounting in conformity with this holding, vacation of the district court's final order appealed from, and entry of judgment in favor of the appellant against the appellee in the amount determined by the accounting to be due.