# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 55

## APRIL TERM, A.D. 2015

## April 10, 2015

JACOB GREENMEYER,

Appellant
(Defendant),

v.

S-14-0207

SANDRA KAY GREENMEYER,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Dameione S. Cameron, Cameron Law Office, P.C., Cheyenne, Wyoming; David M. Korman, Korman Law Office, Laramie, Wyoming.

*Representing Appellee:*

Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Sandra Greenmeyer was awarded a portion of Jacob Greenmeyer's railroad retirement benefits in the decree of divorce terminating their marriage.  For reasons explored below, those benefits were paid to Mr. Greenmeyer.  Ms. Greenmeyer filed a post-divorce motion seeking to recover the benefits.  The district court granted the motion and entered judgment against Mr. Greenmeyer.  He challenges that decision in this appeal.  We will affirm.

## *ISSUE*

[¶2]    Did the district court err in ordering Mr. Greenmeyer to pay Ms. Greenmeyer the retirement benefits that were awarded to her in their divorce decree, but were paid to him?

## *FACTS*

[¶3]    The parties married in 1968 and divorced in 1994.  The divorce decree awarded Ms. Greenmeyer a portion of Mr. Greenmeyer's retirement benefits:

> That [Ms. Greenmeyer] is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of [Mr.] Greenmeyer's benefits under the Railroad Retirement Act (45 U.S.C. 231 et seq.) which may be divided as provided by Section 14 of that Act (45 U.S.C. 231m). [Ms. Greenmeyer's] share shall be computed by multiplying the divisible portion of [Mr. Greenmeyer's] monthly benefit by a fraction, the numerator of which is the number of years [he] worked for a railroad employer during the period of the marriage 6/2/68 through 12/1/94, and the denominator shall be [his] total number of years employed by a railroad employer at retirement, and then dividing the product by two.

> Further, this Court will have continuing jurisdiction to modify this Decree of Divorce so as to assure its qualification as a Qualified Domestic Relations Order.

[¶4]    Mr. Greenmeyer retired in March 2009 when he reached the age of sixty.  He began receiving retirement benefits from the Railroad Retirement Board.  The parties were not in communication with each other then, and Ms. Greenmeyer was unaware of his retirement until some years later.  Upon reaching the age of sixty two, Ms. Greenmeyer applied for her retirement benefits.  She began receiving payments in May 2013.

1

[¶5]    In February 2014, Ms. Greenmeyer filed a motion in the district court asserting that Mr. Greenmeyer had been receiving the retirement benefits awarded to her in the divorce decree.  She sought an order requiring him to pay those benefits to her.  Mr. Greenmeyer opposed the motion.  He did not dispute her entitlement to the benefits she had begun receiving in May 2013, but maintained he was not responsible for the earlier payments she had not received.  After a hearing, the district court granted the motion.  It found that Mr. Greenmeyer owed $680 per month from March 2009, when he retired, to May 2013, when Ms. Greenmeyer began receiving benefits, for a total judgment of $33,320.  Mr. Greenmeyer filed this timely appeal.

## STANDARD OF REVIEW

[¶6]    Post-judgment enforcement of a divorce decree is "addressed to the sound discretion of the trial court," and is "reviewed on appeal only for an abuse of discretion." *Zaloudek v. Zaloudek*, 2010 WY 169, ¶ 7, 245 P.3d 336, 339 (Wyo. 2010).  "An abuse of discretion occurs when a court's decision exceeds the bounds of reason or constitutes an error of law." *Goody v. Goody*, 939 P.2d 731, 733 (Wyo. 1997).

## DISCUSSION

[¶7]    As background to his argument, Mr. Greenmeyer explains that prior to 1983, the Railroad Retirement Act, 45 U.S.C. § 231 *et seq.*, generally prohibited the Railroad Retirement Board from dividing retirement benefits between former spouses.  *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).  Congress responded to *Hisquierdo* by amending the Act in 1983 to allow the Board to divide retirement benefits "in order to distribute property in accordance with court-ordered property settlements pursuant to divorce." *Mahoney v. Mahoney*, 681 N.E.2d 852, 856 n.7 (Mass. 1997) (citing Pub. L. 98-76, tit. IV, § 419(a)(3), 97 Stat. 938 (1983)).  The Board promulgated regulations implementing the amendments.  20 C.F.R. § 295.1.  It also published an *Attorney's Guide to the Partition of Railroad Retirement Annuities* (2011) ("*Attorney's Guide*") explaining "how to effect an annuity partition" under the Act and its regulations.[1]

[¶8]    The parties agree that their divorce decree was purposefully drafted to meet the Board's requirements for dividing Mr. Greenmeyer's retirement benefits and paying

---

[1] At the hearing on this motion, the district court and the parties made several references to the *Attorney's Guide*, and at the request of the district court, it was made part of the record in the case.  As the district court explained, "Should there be an appeal, the Appellate Court should have that as well."  The availability of the *Attorney's Guide* in the record has facilitated our review, and we appreciate the district court's thoughtfulness in including it.

Ms. Greenmeyer's portion directly to her. Such a divorce decree is referred to as a qualified domestic relations order, or QDRO. *See Wyland v. Wyland*, 2006 WY 93, 138 P.3d 1165 (Wyo. 2006). However, as Mr. Greenmeyer points out, obtaining a QDRO is only one step toward receiving payments from the Board. The Board must also be provided with a certified copy of the divorce decree. The former spouse must provide an "Agreement of Spouse or Former Spouse," a direct deposit authorization form, and a current address. *See Attorney's Guide*, 8-9.

[¶9]   As the *Attorney's Guide* explains, there are different sorts of retirement benefits, some of which are not divisible under a QDRO. The employee annuity portion, referred to as a "Tier I" benefit, is not divisible. *Id*. at 1, 4. The spouse annuity or former spouse annuity is also not divisible. *Id*. at 1. Only benefits referred to as "Tier II" are divisible pursuant to a QDRO. *Id*. The retirement benefits at issue in this appeal are Tier II benefits.

[¶10] Although the record is not clear on this point, it appears that when Mr. Greenmeyer retired, he began receiving both his Tier I employee annuity and his Tier II benefits. The record also suggests that the Board provided only a single monthly payment, with no explanation of what amounts were attributable to Tier I or Tier II benefits. There is no indication that Mr. Greenmeyer knew he was receiving benefits that were not his own.

[¶11] The *Attorney's Guide* indicates that a former spouse may begin receiving her portion of the retirement benefits when the employee begins receiving his retirement benefits or when both parties reach the age of sixty two.[2] *Id*. at 9. Again, the record is not clear on this point, but it suggests that Ms. Greenmeyer did not apply for her portion of the benefits earlier because she was unaware that Mr. Greenmeyer had retired. She apparently waited until she reached the age of sixty two before she submitted the qualifying documents and information. The record does not reveal how or when she became aware of Mr. Greenmeyer's retirement. She learned the date of his retirement during the motion hearing.

[¶12] It is undisputed that Ms. Greenmeyer did not begin receiving benefits until May 2013. At that time, she began receiving direct payments from the Board, including her former spouse annuity and her portion of Mr. Greenmeyer's Tier II benefits. In her motion, Ms. Greenmeyer sought to recover her portion of the Tier II benefits that had previously been paid to Mr. Greenmeyer.

[¶13] Mr. Greenmeyer asserted that the language of the divorce decree obligated the

---

[2] Other potential payment triggers are listed, but are not germane to this case.

3

Board, not him, to pay the benefits to Ms. Greenmeyer. The district court's order, he claims, incorrectly places that burden on him. In addition, Mr. Greenmeyer contends that the burden of qualifying to receive the payments rested squarely on Ms. Greenmeyer.[3] He claims that the Board could not legally make the payments to her until she qualified, and the district court's order improperly penalizes him for Ms. Greenmeyer's tardiness in qualifying. Further, under the Board's regulations, when a former spouse is not paid because he or she has not qualified, "no arrearage accrues to the former spouse." *Id.* at 12. On this basis, Mr. Greenmeyer claims that the district court's order conflicts with the Board's regulations.

[¶14] Our first step in analyzing Mr. Greenmeyer's claims is to consider the language of the divorce decree. The pertinent language is that "[Ms. Greenmeyer] is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of [Mr.] Greenmeyer's benefits under the Railroad Retirement Act." Mr. Greenmeyer focuses on the provision directing the Board to make the payments. He overlooks the provision awarding the benefits to Ms. Greenmeyer.

[¶15] We have previously recognized that "retirement funds, whether vested, nonvested, or not matured, are marital property divisible upon divorce." *Wyland*, ¶ 8, 138 P.3d at 1167. As the district court concluded, Mr. Greenmeyer's retirement benefits had been so divided in the divorce decree. In granting the motion, the district court explained:

> I'm going to go to the [divorce decree], which is what I'm asked to enforce here. The focus on the Railroad Retirement Act is somewhat misplaced. The Court always has the authority to order, and did here, a percentage of retirement or employee benefits. . . . I think it's perfectly clear, reading the property settlement adopted in the decree, that the distribution of property included that once he retired, he owed her. The railroad was the mechanism of payment. It didn't matter who was going to pay the retirement. . . . [Qualifying to receive] payment directly to her was up to her. I agree with that. . . . [B]ut he cannot benefit to the tune of

---

[3] Although the *Attorney's Guide* indicates that the former spouse must complete and submit the "Agreement of Spouse or Former Spouse," the direct deposit authorization form, and a current address, it does not specify which party must submit the certified divorce decree. However, it does state that if the divorce decree is submitted before the employee becomes eligible for benefits, the Board will file the order in its records and notify the former spouse when the employee does become eligible. *Id.* at 11. If either party had submitted the decree to the Board immediately after the divorce decree was entered in 1994, the complications seen in this litigation might have been avoided.

> $600 a month when it clearly was not his, it was hers under
> this distribution.

[¶16] We considered a comparable situation in *Young v. Young*, 709 P.2d 1254 (Wyo. 1985), in which the divorce decree awarded Ms. Young a portion of Mr. Young's oil and gas royalties. Mr. Young assigned the interests to her as ordered, but Ms. Young "failed to file the assignment for record in some counties and to notify some crude oil purchasers of her interest. The result was that, in many instances, [he] was paid royalties that should have gone to [her]." *Id*. at 1255. When Ms. Young sought to recover her royalties from Mr. Young, he argued he should not be required to pay because it was her obligation to file the assignments. We concluded, however, that Mr. Young had converted her property, and Ms. Young was entitled to recover it. *Id*. at 1257.

[¶17] The district court's analysis is consistent with our decision in *Young*, and with other previous decisions regarding the division of retirement plans upon divorce. When the divorce decree awarded a portion of Mr. Greenmeyer's retirement benefits to Ms. Greenmeyer, that portion became her property, even if she would not receive payments until later. *See Forney v. Minard*, 849 P.2d 724, 727 (Wyo. 1993). The benefits still belonged to Ms. Greenmeyer, even though the Board had paid them to Mr. Greenmeyer. Mr. Greenmeyer may be correct that the Board is not liable to Ms. Greenmeyer for arrearages, but that does not settle the question of his liability.

[¶18] The district court's observation that the railroad was merely a "mechanism" for Ms. Greenmeyer to receive payments is also consistent with our characterization of a division of retirement benefits under the Uniformed Services Former Spouses Protection Act, 10 U.S.C.S. § 1408. *See Forney*, 849 P.2d at 730; *see also In re Marriage of Drexler*, 315 P.3d 179, 181 (Colo. Ct. App. 2013) ("A QDRO is a mechanism . . . to allow a former spouse to receive all or a portion of the benefits owed to a participant under a retirement plan."). Regardless of the mechanism of payment, however, the divorce decree awarded certain retirement benefits to Ms. Greenmeyer, and she is entitled to recover her property from Mr. Greenmeyer.

[¶19] One additional argument made by Mr. Greenmeyer merits attention. The district court ordered him to pay four years' worth of retirement benefits to Ms. Greenmeyer, with a resulting judgment of more than thirty thousand dollars. He asserts that this decision "raises the specter of [a party] sitting on her rights for an even longer period of time," resulting in an extremely large judgment and "a vast amount of uncertainty." We understand these concerns, but also recognize that a party who sits on her rights too long may find her claims barred by laches, estoppel, or other defenses. In the *Young* case, for example, the applicable statute of limitations barred Ms. Young from recovering royalty payments made to Mr. Young more than four years prior to her filing suit. *Id.*, 709 P.2d at 1260.

[¶20] Mr. Greenmeyer's district court pleadings contain no mention of these defenses. Laches was mentioned briefly during the hearing, but the district court found "no laches." Mr. Greenmeyer has not challenged this aspect of the district court's decision. We need not consider the application of these defenses in the present appeal.

[¶21] We find no abuse of discretion and affirm the district court's order.